[Opinion delivered March 17, 1886.]

[No. 1824.]

### D. L. JONES *v.* THE STATE.

1. ASSAULT TO MURDER — SELF-DEFENSE — CHARGE OF THE COURT.— EVIDENCE upon a trial for assault with intent to murder tended to establish the fact that there were others present besides the injured party, apparently acting with the injured party, one being armed with a pistol; that they acted with the injured party in an assault upon the defendant; that the defendant was

knocked down by the injured party, and that some one with the injured party fired one shot. Under such a state of facts the rule obtains that if the persons present were acting with the injured party in an attack upon the defendant, or if they or either of them made an attack upon the defendant, the injured party being present and acting with them in such a manner as to make him a principal to such attack; or if the appearances were such as to cause, and did cause, in the mind of the defendant a reasonable belief that the injured party was a party to the attack upon him, or which was about to be made upon him, by all or either of such parties, the defendant's right of self-defense would extend to the acts of each and all of the party, because the act of one would be the act of all. See the opinion *in extenso* for a charge of the court *held* error, because it contravenes the doctrine announced, in that it limited the defendant's right of self-defense to his belief that the injured party was about to attack him with a deadly weapon.

2. SAME — PRACTICE.— The offense alleged in the indictment being a felony, and the conviction being for a misdemeanor, the assistant attorney-general insists that the whole case partakes of the nature of a misdemeanor, and that therefore the objection to the charge of the court comes too late when made for the first time after verdict. But *held* that the case, when the charge was given, was a felony case, and subject to the rules governing instructions applicable to felony cases.

APPEAL from the District Court of Polk. Tried below before the Hon. Edwin Hobby.

The indictment in this case charged the appellant with an assault with intent to murder one E. Stringer, in Polk county, Texas, on the 1st day of October, 1883. His trial resulted in his conviction of an aggravated assault and battery, and his punishment was assessed at a fine of $687.50.

Eph. Stringer was the first witness for the State. He testified that he was shot by the defendant, on or about December 13, 1883. The pistol ball entered behind the witness's left jaw, and passed out on the opposite side near the cheek bone. At the time that the shooting was done, an election was in progress, involving the location of the county seat of Polk county, the contesting points being Moscow and Leggett. The witness was in the town of Moscow attending the election, and when going to the polls he had to pass through a short alley formed by the store-house of John Adams and a store-house in which the defendant was employed as a clerk. The witness had been drinking some, but was not drunk. On his way through the alley with a man named Snell, the witness had occasion to stop, when he heard a pistol shot, fired, he thought, behind him. Turning around, he saw the defendant with a pistol in his hands. Witness started towards the defendant to see what was the matter, when the defendant fired again. He fired two shots, but witness

was unable to say which of the two was the one that wounded him. The two shots were fired in very rapid succession. The defendant and the witness had no difficulty prior to the shooting. Witness had no pistol and was making no effort to harm, or do anything to the defendant. The witness was in favor of removing the court-house to Leggett, and defendant favored its retention at Moscow. Witness was hallooing for Leggett, and defendant and others for Moscow. The witness could not remember who was holding him when he was shot, nor who the parties were that went with him into the alley when the difficulty occurred. Witness had no recollection of having any words, trouble or difficulty with Sam Jones prior to the difficulty. The witness had no recollection of having a wordy quarrel with the defendant at the polls on that day, or that defendant told him to go to somebody else if he wanted a difficulty. He had no recollection of cursing Moscow or the citizens of Moscow. The witness had no recollection that the defendant left him at the polls, and went in the direction of the alley and his place of business, and that witness followed him. The party holding the witness at the time that witness was shot was holding him to prevent the witness from getting to the defendant. The witness saw the defendant raise his pistol to his face, saw the flash from the pistol, and heard the report. The witness would not say positively that the entrance of the ball was at the point behind the ear. Its point of entrance may have been in front, under the eye, but the witness thought that it entered from the other point,— behind the ear. The alley described had to be passed through in order to reach the polls. Witness was hurrahing for Leggett, and the defendant for Moscow.

John Leggett testified, for the State, that he was in the town of Moscow on the day of the shooting. When the difficulty occurred, witness was on the street looking out for voters. Witness did not hear the first shot fired. Before the second was fired he looked around and saw the defendant walking backwards. A crowd was circling around Stringer. Stringer, the witness thought, was then on his feet or his knees, and defendant fired at him twice. Witness could not say that either of those shots struck Stringer. He did not know whether the defendant fired the first shot, or whether Stringer or some one else fired it. Defendant had on no overcoat at the time of the shooting.

M. Winston testified, for the State, that he was not in a position to see the parties when the first pistol shot was fired. He saw the defendant walking backwards when the second shot was fired. When defendant reached the end of the alley he turned towards the

door of his store. In the meantime Stringer advanced upon the defendant, and just as he crossed the alley, defendant fired and Stringer fell. That shot was the last one fired. From the time that witness first saw Stringer until he fell, he advanced upon the defendant about ten feet, and defendant retreated about the same distance. If Stringer had a pistol the witness did not see it. At the time of the difficulty, the defendant had on a brown overcoat.

J. F. Wilson testified, for the State, that he saw Stringer and two other parties in the alley. The two other parties were striking at the defendant with their hands, and cursing Moscow and the citizens of Moscow. The defendant was then hurrahing for Moscow, and appeared to be warding off the blows with his left hand, keeping his right hand in his pocket. Defendant during this time was walking backward, and the other parties were advancing. About that time the defendant struck at them with his pistol, which was discharged, the ball passing over the witness's head. Thereupon the witness sprang behind a convenient house. The witness did not see the second or third shots fired. He did not know whether the defendant was knocked down by Stringer or either of the other parties or not. The State closed.

Sam Jones was the first witness for the defense. He testified that he was the father of the defendant, and was at Moscow on the day of the difficulty. He saw Stringer in town that day, very drunk and very boisterous. He cursed, villified and abused every man who supported Moscow in the contest for the county seat then progressing. He approached the witness in a very offensive manner, and began cursing Moscow and Moscow men. Witness told him that he was a Moscow man, and Stringer said: "G—d d—n any man who will vote for Moscow." The witness then told Stringer that if he wanted a difficulty he would have to hunt some other man, and walked off. In a few minutes witness saw Stringer trying to raise a difficulty with Mr. John S. Hovis. He cursed Hovis and all men who supported Moscow. Hovis walked off and left Stringer. Defendant had on a light brown overcoat at the time of the difficulty. On the next morning witness saw a bullet hole through the top of the shoulder of the overcoat. It was not there before the difficulty.

John S. Hovis testified, for the defense, that he was at Moscow on the day of the difficulty. Stringer was in town, very drunk, boisterous, quarrelsome and insulting. He continually cursed and abused Moscow and Moscow men. He sought to provoke a difficulty with witness, approaching the witness in a very offensive manner.

The interference of witness's son prevented a possibly serious difficulty between witness and Stringer. Witness finally remarked to Stringer that if he persisted in his conduct he would "catch it," and walked off. On leaving Stringer witness met an old negro who wanted to vote, but was afraid to go to the polls on account of Stringer's conduct. The witness then started to the polls, and heard the report of a pistol in the direction of the point where the defendant and Stringer then were. Witness saw the defendant on the ground, in the act of getting up. Stringer was then advancing upon and cursing the defendant. Two shots were then fired, but the crowd had got so dense that witness was unable to say who fired them. Stringer fell when the last shot was fired. The first shot, judging from the sound, was fired from a different pistol than that from which the last two were fired.

L. C. Harding testified, for the defense, that he and the defendant were standing near the polls in conversation, when Stringer and Snell came up and began talking to defendant, cursing Moscow and Moscow men. Defendant told them that, if they wanted a difficulty, they would have to hunt it elsewhere. Defendant then left, going in the direction of the alley where the difficulty subsequently occurred. Stringer and Snell followed, and the witness, seeing that a difficulty was likely to occur, went in another direction. Just as witness reached Goodwin's store he heard three shots fired. The first shot was fired from a different and smaller pistol than that from which the last two were fired.

Lewis Austin testified, for the defense, that he was standing in front of Adams's store in Moscow on the day of the county-seat election, when he heard a pistol fire about a point in front of Jones's house, at the other end of the alley. Witness thought at first that that noise was made by the popping of a whip. A crowd ran towards defendant's house, and witness followed. Just before he reached the place of the difficulty he heard the words, uttered in the defendant's voice: "If that's your game, here's at you." Two pistol shots were then fired.

S. M. Powell testified, for the defense, that he was standing near the parties when the difficulty occurred. Some one fired a shot, when the defendant drew his pistol and said: "If that's your game, here's at you." Witness sprang behind a house, and heard two pistol shots.

T. F. Muse testified, for the defense, that he saw the difficulty. He heard a pistol shot, and then saw defendant draw his pistol and fire twice at Stringer.

Doctor O. C. Powell testified, for the defense, that he saw the defendant's overcoat on the morning after the difficulty. It had a small hole through the top of the shoulder, which the witness thought was a shot or bullet hole.

W. Gibbs testified, for the defense, that, on the day before this trial, Stringer told him that defendant did not fire the first shot in the difficulty. The defense closed.

Dock Glass testified for the State, in rebuttal, that he went into the alley with Stringer and Snell at the time of the difficulty. Stringer said: "G—d d—n Moscow," and defendant shot him.

Cross-examined, witness stated that when the parties entered the alley, defendant and Stringer began slapping each other in a pleasant, friendly manner, Stringer saying, "G—d d—n Moscow." Defendant thereupon shot Stringer.

Ed. Adams was introduced by the defendant in rebuttal. He testified that he and the defendant were brothers-in-law. Witness was in the alley at the time of the difficulty. Stringer, Snell and another party whom the witness did not know, cursed Moscow and Moscow men. The parties named got to cursing the defendant, and the defendant retorted by cursing them. Stringer then struck the defendant and knocked him down. As the defendant fell, a pistol was fired from the direction of the point at which Stringer and the other two parties were standing. Stringer then advanced upon defendant and witness caught him to prevent him from making any further attack upon defendant. Stringer, being a very powerful man, easily threw witness off, and continued his advance upon defendant. Defendant fired twice as Stringer was advancing, and Stringer fell at the second shot. The alley spoken of by the various witnesses separated John Adams's store and defendant's house.

The motion for new trial raised the questions discussed in the opinion.

*J. M. Crosson* filed an able brief and argument for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

Hurt, Judge. Appellant was charged by the indictment with assault to murder, was convicted of aggravated assault and battery, and his punishment was assessed at a fine of $687.50.

The court charged the jury as follows:

(1) "A person has the right to protect himself against an unlawful or violent attack, or when he has reasonable grounds to believe,

or does believe, another is about to attack him, but in exercising this right he should not use greater force or means than is necessary to fully protect himself. If a person is attacked or about to be attacked, or has reasonable grounds to believe that he is in danger of an attack from another with a deadly weapon, he has the right to use a deadly weapon to protect himself, but he would not be justified in using a deadly weapon to defend himself against an attack from another without any weapon, if he can protect himself without resort to a deadly weapon. In other words, he should use such means as are proportionate to the character of attack upon him, and is sufficient to protect himself fully from injury, but not such as would be disproportionate to the attack on him and make him the aggressor, for in that case he could not justify on the grounds of self-defense. Now, applying these rules to the case before you:

(2) "If you believe that Stringer was about to attack or attacking Jones with a deadly weapon, or that Jones had reasonable grounds from the acts or words of Stringer, or Stringer and others, to believe he was in danger of such an attack, or did believe he was in danger of such an attack, and that to protect himself he shot Stringer, while *Stringer was about to make or was making such an attack*, you will acquit."

The evidence is conflicting. There is evidence strongly presenting self-defense, which is the theory of the defense; and, from the testimony of some of the witnesses, there were other persons present apparently acting with Stringer, one being armed with a pistol; that they were acting with Stringer, the party charged to have been assaulted, in an attack upon defendant; that appellant was knocked down by Stringer, and some one with him fired one shot. (See testimony of Ed. Adams.)

Now, if those persons were acting with Stringer in an attack upon defendant, or if they or either of them made an attack upon defendant, Stringer being present and acting with them in such manner as to make him a principal to such attack, and if the appearances were such as to cause in the mind of defendant a reasonable belief, and did cause such belief, that Stringer was a party to the attack made upon him, or which was about to be made upon him, by all or either of such parties, the defendant's right of self-defense would extend to the acts of each and and all of the party because the act of one would be that of all. (*Cartwright* v. *The State*, 16 Texas Ct. App., 473.)

Under these principles, was the charge of the court, requiring the jury to believe that *Stringer* was about to attack appellant with a

*deadly weapon,* correct? Most evidently not. Suppose, as said evidence tends to show, that some other person who was acting with Stringer in the attack on appellant had shot at, or was in the act of shooting, appellant, or that appellant from the surrounding facts had reasonable grounds to believe, and did believe, that some of the Stringer party was in the act, or had done some act showing an immediate intention to attack him with a deadly weapon, would he not have the right to defend himself by a counter attack upon any of the party engaged in such an attack upon him? We think so. (*McLaughlin* v. *The State,* 10 Texas Ct. App., 360; *Cartwright* v. *The State, supra.*)

We are of the opinion that the charge given above is wrong under the facts of this case, and was unquestionably calculated to injure the defendant.

It is urged by the assistant attorney-general that this is a misdemeanor, and the charge not objected to, and hence the objection comes too late after verdict and judgment. When the charge was given to the jury *the case at that time* was a felony, and the rules governing the court in reference to instructions to the jury should apply.

Because of error in the charge, the judgment is reversed and the cause remanded.

*Reversed and remanded.*